UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | |
|---|---|
| BRIAN OLIVER, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 07-2151 |
| ) | |
| DUNN COMPANY, MARK STAHL, ) | |
| and DAVID TYROLT, ) | |
| ) | |
| Defendants. ) | |

# REPORT AND RECOMMENDATION

In August 2007, Plaintiff Brian Oliver filed a Complaint (#1) against Defendant Dunn Company, alleging violations of federal law related to Plaintiffs' employment. In October 2008, Plaintiff filed a First Amended Complaint (#15), adding claims against Defendants Mark Stahl and David Tyrolt. Federal jurisdiction is based on federal question pursuant to 28 U.S.C. § 1331 because Plaintiffs have raised claims based on federal statutes.

In December 2008, Defendant Stahl filed a Motion To Dismiss (#21) and Defendant Tyrolt filed a Motion To Dismiss (#27). Plaintiff subsequently filed his Opposition to Defendants' Motions To Dismiss (#33). After reviewing the parties' pleadings and memoranda, this Court recommends, pursuant to its authority under 28 U.S.C. § 636(b)(1)(B), that Defendant Stahl's Motion To Dismiss **(#21)** be **DENIED**.

## I. Background

The following background is taken from the complaint. Defendant Dunn is in the business of asphalt paving and related work and operates as a contractor on both public and private projects. At relevant times, Defendants Stahl and Tyrolt were managers who were involved in the decisions not to transfer or promote Plaintiff and to terminate his employment. (#15, ¶¶ 6, 62.)

Dunn is a union shop. Its business is seasonal and employees work from about April through November each year. At the beginning of each season, Dunn hosts a kick-off breakfast. Dunn is subject to minority requirements with regard to public projects. Dunn employees are organized into crews, generally consisting of a foreman, one or more laborers, a teamster, and an operator. In general, crews that do not specialize in public projects have the most steady work and the most overtime opportunities and the most favorable assignments are to those crews that have the best income opportunities. Dunn transferred employees between crews and promoted laborers to foremen on a discretionary basis. The company did not post openings for positions on other crews or for foremen positions.

Dunn hired Plaintiff, an African-American, as a laborer in 1999. During his first season with Dunn, Plaintiff worked on the Roto-Milling Crew, which works mostly on public projects. In 2001, Dunn worked on the Oil and Chipping Crew in addition to the Roto-Milling Crew. The Oil and Chipping Crew works about three weeks a year and it works primarily on public projects. Most other crews, including the Base Crew and the Paving Crew, generally had more work than the crews to which Plaintiff was assigned.

Beginning in 2001, Plaintiff regularly informed his superiors that he wanted to transfer to more lucrative crews, especially the Paving Crew or the Base Crew. He also told them he wanted a promotion to foreman. He was not transferred or promoted; instead he continued to work for the crews that had minority requirements.

In April 2005, Dunn hired Jake Mann as foreman of the Base Crew. Defendant Stahl told Plaintiff he had not been overlooked for the position. Stahl explained that Dunn knew he could do the job and decided that Mann could do a better job.

In August 2005, Plaintiff was involved in a car accident and took two to three weeks off work as a result. When he returned to work, he learned that Dunn had filled a position on the Paving Crew, one of the crews on which he wanted to work. Plaintiff subsequently complained to Stahl and other people at Dunn that he believed Dunn was discriminating against him because

of his race. In September 2005, Plaintiff filed a charge of race discrimination with the Illinois Department of Human Rights and Equal Employment Opportunity Commission.

In 2006, for the first time since he began working for Dunn, Plaintiff was not invited to the kick-off breakfast. Beginning in April 2006, Plaintiff repeatedly called Dunn and the union hall for work and every time he was told there was no work available. During the preceding year, consistent with the company's practice, Plaintiff had informed Dunn of his vacation plans for 2006. During the 2006 season, Dunn asked Plaintiff to work only during periods that the company knew he was scheduled for vacation.

On July 3, 2006, Dunn managers refused to take Plaintiff's calls requesting work. Plaintiff left a message stating he was available and wanted to work. Dunn never returned Plaintiff's call and never again contacted him to work. Plaintiff alleges that Dunn terminated and/or constructively discharged Plaintiff on July 3, 2006, and that Defendants Stahl and Tyrolt were the company managers who decided not to call Plaintiff back to work after he filed his discrimination charge in September 2005.

In March 2007, Plaintiff filed a charge of retaliation with the Illinois Department of Human Rights and Equal Employment Opportunity Commission. He received his right to sue letters in May 2007 and filed his complaint in this case in August 2007. In October 2008, Plaintiff filed an amended complaint adding Defendants Stahl and Tyrolt.

The amended complaint alleges four counts, as follows: In Counts I, against all Defendants, Plaintiff alleges race discrimination in violation of 42 U.S.C. § 1981. In Count II, against Dunn, Plaintiff alleges race discrimination in violation of 42 U.S.C. § 2000e (hereinafter "Title VII"). In Count III, against all Defendants, Plaintiff alleges retaliation in violation of Section 1981. In Count IV, against Dunn, Plaintiff alleges retaliation in violation of Title VII. Plaintiff's discrimination claims are based on Defendants' failure to promote or to transfer him. The retaliation claims are based on what Plaintiff calls his termination and/or constructive discharge.

## II.  Standard

A motion to dismiss for failure to state a claim tests the sufficiency of the complaint; it does not decide the merits of the claims. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). On a motion to dismiss, the Court treats all well-pleaded allegations in the complaint as true and grants all reasonable inferences in the plaintiff's favor. *McMillan v. Collection Prof"ls, Inc.*, 455 F.3d 754, 758 (7th Cir. 2006); *see Bell Atl. Corp. v. Twombly*, — U.S. —, 127 S. Ct. 1955, 1965 (2007) (requiring plausible grounds for inferences if those inferences are to sustain a complaint). However, the Court is not required to accept as true a legal conclusion presented as a factual allegation. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1092 (7th Cir. 2008).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The United States Supreme Court has interpreted this language to impose two easy-to-clear hurdles:  First, the plaintiff must plead sufficient facts to give fair notice of the claim and the ground upon which it rests, and second, those facts, if true, must plausibly suggest that the plaintiff is entitled to relief, "raising that possibility above a 'speculative level'." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776-77 (7th Cir. 2007) (citing *Bell Atl.*, 127 S. Ct. at 1965, 1973 n.14).

## III.  Analysis

Defendant Stahl argues that the Court should dismiss Plaintiff's claims against him because (1) the two-year statute of limitations for Section 1981 claims bars the claims related to failure to promote and retaliation; (2) Plaintiff failed to adequately allege a claim based on failure to transfer; (3) the failure to promote claim and the retaliation claim do not relate back to the original claims; and, alternatively, (4) the Court should strike the prayer for punitive damages because Plaintiff failed to plead malice or reckless disregard.

### A.  Statute of Limitations

Defendant first argues that the statute of limitations bars Plaintiff's Section 1981 claims related to failure to promote and termination.

As originally enacted, Section 1981 was interpreted to protect only the creation and enforcement of contracts. *See Patterson v. McLean Credit Union*, 491 U.S. 164, 185 (1989), *superseded by statute on other grounds*, Civil Rights Act of 1991, Pub. L. 102-166; 42 U.S.C. § 1981(a). In 1991, Congress superseded this narrow interpretation by amending Section 1981. The amended statute enlarged the category of conduct that was subject to liability by defining the phrase "make and enforce contracts." Section 1981(b) provides as follows:

> For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

42 U.S.C. § 1981(b).

As a result, courts construe Section 1981 as providing for two possible types of employment claims: "old" claims for failure to hire and "new" claims for termination of or interfering with an existing employment relationship. *See Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 269 n.4 (7th Cir. 2004).

Prior to 1990, the statute of limitations for Section 1981 claims was two years under Illinois law. *Smith v. City of Chi. Heights*, 951 F.2d 834, 837, n.1 (7th Cir. 1992); 735 O:CS 5/13-202. In 1990, Congress enacted 42 U.S.C. § 1658(a), which created a default four-year statute of limitations for civil actions arising under any Act of Congress enacted after December 1, 1990. Thus, the two-year statute of limitations applies to "old" claims; those claims that could have been brought under Section 1981 before it was amended and the four-year statute of limitations applies to "new" claims; those claims that were made possible by virtue of the definition of "make and enforce contracts" under Section 1981(b). *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004) (a cause of action is governed by Section 1658's four-year statute of limitations if a post-1990 enactment made the plaintiff's claim possible). The pre-1991 statute prohibits discrimination that involves making and enforcing contracts and the two-year limitations period applies to those claims. The revised statute prohibits conduct that occurs after contract formation and the four-year limitations period applies. For example, in *Jones*, the Supreme Court concluded that the plaintiff's hostile work environment, wrongful termination,

and failure to transfer claims arose under the amended statute because the plaintiff's claims were made possible by the amended statute. *Id.* at 383. Thus, the four-year statute of limitations applied to those claims.

Defendant does not dispute that the failure to transfer claim constitutes a "new" claim because it arose under the amended Section 1981. Thus, the four-year limitations period applies to that claim. Defendant contends, however, that the failure to promote and retaliation claims could have been brought under the pre-1991 statute, therefore they are covered by a two-year limitations period. As a result, they are barred by the limitations period.

### 1. Termination/Constructive Discharge Claim

Defendant argues that the pre-1991 version of Section 1981 encompasses retaliation claims, therefore, the two year statute of limitations applies to Plaintiff's retaliation claim. In support, Defendant relies on *CBOCS West, Inc. v. Humphries*, — U.S. —, 128 S. Ct. 1951 (2008), and *Sullivan v. Little Hunting Park, Inc.,* 396 U.S. 229 (1969) (in which the Supreme Court interpreted 42 U.S.C. § 1982's general prohibition of racial discrimination to include retaliation against a white man for advocating the rights of blacks[1]). Specifically, Defendant contends that, because the Supreme Court determined in *Sullivan* that a retaliation claim was cognizable under the pre-1991 statute, Plaintiff's retaliation claim here is also cognizable under the pre-1991 statute.

However, the claim in *Sullivan* was cognizable under the pre-1991 statute because the conduct that constituted retaliation in that case involved the formation of a contract. *See id.* at 237. Thus, the claim in *Sullivan* clearly fell within the scope of the pre-1991 statute.

In contrast, here, Plaintiff alleges retaliation in the form of termination or wrongful discharge. A wrongful termination claim necessarily involves conduct that occurs after formation

---

[1] As Defendant points out, courts construe Sections 1981 and 1982 alike. *See CBOCS*, 128 S. Ct. at 1955.

of a contract, therefore it is "new" claim, covered by the post-1991 statute. *Dandy*, 388 F.3d at 269 (holding that the plaintiff's claims, including wrongful termination, were subject to the four-year statute of limitations because they were premised on conduct that occurred after the formation of the employment). As a result, the four-year statute of limitations applies.

Defendant also contends that Plaintiff's claim is actually based on the company's failure to rehire him, rather than on termination and that constitutes retaliation in the formation of a contract rather than retaliation in the terms and conditions of his employment. This may be true; notwithstanding Plaintiff's use of the words "termination" and "constructive discharge," the allegations of the complaint are not entirely clear regarding the nature of Plaintiff's employment relationship with Dunn and whether Plaintiff's claim is based on his termination or the company's failure to enter into a new contract with him.

However, at the motion to dismiss stage, the Court must treat all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *McMillan*, 455 F.3d at 758. Plaintiff has alleged that Defendant retaliated against him by terminating his employment and the Court must accept that at this time. Accordingly, the Court recommends denying the motion to dismiss the retaliation claim. Defendant may file a motion for summary judgment addressing this issue once the parties have resolved some of the factual questions.

### 2. Failure To Promote Claim

Defendant next argues that Plaintiff's failure to promote was also cognizable under the pre-1991 version of Section 1981 because it rose to the level of an opportunity for a new and distinct relation between the employee and the employer. *See Patterson*, 491 U.S. at 185 ("the question whether a promotion claim is actionable under § 1981 depends upon whether the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer"). In *Patterson*, the Court reasoned that "where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer," a failure to promote claim is actionable under the old version Section 1981. *Id.*

Plaintiff responds that Defendant's argument is premature because whether an alleged promotion rises to the level of a new and distinct relationship is a question of fact. *See, e.g., Taylor v. W. & S. Life Ins. Co.*, 966 F.2d 1188, 1200-01 (7th Cir. 1992).

Defendant acknowledges that the Seventh Circuit has applied several different tests to determine whether a promotion would constitute an opportunity for a new relationship between the employee and employer. Defendant contends that Plaintiff's complaint includes allegations that the purported promotion would have resulted in increased responsibility, increased wages, and increased overtime, therefore the allegations provide enough information for the Court to apply those tests.

After reviewing the factors involved in the tests, the Court concludes that the complaint does not provide enough information to determine whether the purported promotion rose to a level that would constitute an opportunity for a new relationship between Plaintiff and the company. In light of its obligation to draw all reasonable inferences in the plaintiff's favor, the Court infers that the promotion would have affected the terms and conditions of Plaintiff's job, but it would not have constituted a new relationship such that it implicated the making of a new contract. Therefore, the four-year statute of limitation applies to the claim and the Court recommends denying the motion to dismiss this claim. The Court invites Defendant to raise this issue in a motion for summary judgment at the appropriate time.

### B. Failure To Transfer Claim

Defendant also argues that Plaintiff has failed to plead sufficient facts to support his failure to transfer claim. Specifically, Defendant contends that Plaintiff has failed to plead any facts that plausibly suggest discrimination because Plaintiff alleged he was off work at that time and Plaintiff failed to allege he told Stahl he wanted to be transferred.

To state a claim under Section 1981, a plaintiff must show that (1) he is a member of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination interfered with a protected activity under Section 1981. *Morris v. Office Max,*

*Inc.,* 89 F.3d 411, 413 (7th Cir. 1996); *Pourghoraishi v. Flying J, Inc.,* 449 F.3d 751, 756 (7th Cir. 2006).

At this stage in the pleadings, the Court finds that Plaintiff has alleged sufficient facts to state a failure to transfer claim pursuant to Section 1981. Plaintiff alleged that (1) he is African-American; (2) there was an opening in the Paving Crew in 2005; (3) he was not transferred to that crew; (4) Stahl was involved in the decision not to transfer Plaintiff; and (5) Plaintiff believed Defendants' conduct was based on Plaintiff's race. This is sufficient to give Defendants notice of the basis for Plaintiff's claim. Stahl's argument that it is not plausible to suggest that Stahl waited for Plaintiff to be incapacitated for a two-three week period before he filled an open position requires the Court to consider Stahl's motive, a factual determination that the Court cannot address at the motion to dismiss stage. *See Welch v. Cook County Clerk's Office*, 36 F. Supp. 2d 1033, 1037 (N.D. Ill. 1999) (stating that the fact that the plaintiff may ultimately be unable to present evidence to support her claims is not a basis for dismissal). Drawing all inferences in favor of Plaintiff, the Court recommends denying the motion to dismiss this claim.

### C. Plaintiffs' Prayer for Relief

Finally, Defendants argue that the Court should strike the prayer for punitive damages because Plaintiff failed to plead malice or reckless disregard.

Plaintiff responds that he is not required to plead facts at this stage and that his prayer for relief places Defendants on notice that Plaintiff is seeking punitive damages.

Defendant has not argued that punitive damages are unavailable under Section 1981. The Seventh Circuit has stated that an award of punitive damages under Section 1981 "should be reserved for willful wrongdoing or reckless indifference to the plaintiff's known rights." *Williamson v. Handy Button Mach. Co.,* 817 F.2d 1290, 1296 (7th Cir. 1987). The court further noted that "[t]he rule against racial discrimination in employment is well understood; no employer has a good faith belief that discrimination is lawful." *Id.* Accordingly, the Court recommends denying the motion to strike Plaintiff's prayer for punitive damages.

### IV.  Summary

For the reasons set forth above, this Court recommends that Defendant Mark Stahl's Motion To Dismiss **(#21)** be **DENIED**.  The parties are advised that any objection to this recommendation must be filed in writing with the clerk within ten working days after being served with a copy of this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1).  Failure to object will constitute a waiver of objections on appeal.  *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

ENTER this 7th day of April,

                                                           s/ DAVID G. BERNTHAL  
                                                           U.S. MAGISTRATE JUDGE